| | AUSA:   Trevor Broad | Telephone:  (313) 226-9100 |
|---|---|---|
| AO 106 (Rev. 04/10)  Application for a Search Warrant | Special Agent:   Brady Rees | Telephone:  (313) 202-3400 |

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Michigan

| | | |
|---|---|---|
| In the Matter of the Search of | ) | Case: 2:20-mc-50827 |
| *(Briefly describe the property to be searched* | ) | Judge: Goldsmith, Mark A. |
| *or identify the person by name and address)* | ) Case No. | Filed: 07-15-2020 At 09:48 AM |
| | ) | IN RE:SEALED MATTER (SW)(MLW) |
| 19550 Berg Road | ) | |
| Detroit, Michigan | ) | |
| (More fully described in Attachment A) | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

located in the _____ Eastern _____ District of _____ Michigan _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(n) | Illegal possession of a firearm while under indictment |

The application is based on these facts:

See attached AFFIDAVIT.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's  signature*

Brady Rees, Special Agent (ATF)
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date:   July 15, 2020
_____
*Judge's signature*

City and state:   Detroit, Michigan

Hon. Anthony P. Patti       U. S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Brady W. Rees, being first duly sworn, hereby depose and state as follows:

## Introduction

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of the premises located at 19550 Berg Road, Detroit, Michigan ("Target Location") as further described in Attached A, and the seizure of items described in Attachment B.  The Target Location is in the Eastern District of Michigan.

2.      The statements in this Affidavit are based on my personal knowledge from my direct involvement in this investigation; communications with others who have personal knowledge of the events and circumstances described herein; information provided by other law enforcement agents; and information gained through my training and experience as well as the training and experience of other experienced law enforcement officers.

3.      The information outlined below is for the limited purpose of establishing probable cause for the requested warrant, and this affidavit does not contain all the information known to law enforcement related to this investigation.

Agent Background

4.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").  I have been an ATF Special Agent since January 2016, and I have had extensive law enforcement training, including at the Federal Law Enforcement Training Center in the Criminal Investigator Training Program and ATF Special Agent Basic Training. In addition, I have a bachelor's degree in Criminal Justice.

5.     As an ATF Special Agent, I have participated in numerous federal investigations as well as authored federal search warrants, federal criminal complaints, and federal arrest warrants.  Prior to becoming an ATF Special Agent, I was a police officer for approximately three years in the City of Novi, Michigan.

Investigation Overview

6.     I am investigating Jaquavious COLEMAN-HUMPHREY (XX/XX/1999), who resides at the Target Location, for violations of federal firearms laws.  As detailed below, probable cause exists to believe that COLEMAN-HUMPHREY illegally possessed a firearm while under indictment, in violation of 18 U.S.C. § 922(n).  There is probable cause to believe that fruits, instrumentalities and evidence of violations of 18 U.S.C. § 922(n), such as the clothing/shoes seen in relevant social media posts, cell phones, ammunition, and firearms, will be found at the Target Location.

7.     During the months of May, June and July of 2020, I and other ATF agents as well as Detroit Police Department officers conducted an investigation of COLEMAN-HUMPHREY for violations of federal firearm laws.

8.     During my investigation of COLEMAN-HUMPHREY, I discovered COLEMAN-HUMPHREY is currently on pretrial release, with GPS tether monitoring, related to a felony carjacking offense in Wayne County on May 11, 2020.   In addition, I reviewed a Computerized Criminal History ("CCH") for COLEMAN-HUMPHREY, which reflected that COLEMAN-HUMPHREY was sentenced under the provisions of the Holmes Youthful Trainee Act ("HYTA") for the following offenses:

    a.     December 17, 2019 – Felony – Weapons – Carrying Concealed – 3rd Circuit Court

- Sentenced to two years of probation under HYTA

    b.     February 13, 2020 – Felony Police Officer – Assaulting/Resisting/Obstructing

- Sentenced to two years of probation und HYTA

    c.     February 13, 2020 – Felony – Weapons – Carrying Concealed – 3rd Circuit Court

- Sentenced to two years of probation under HYTA

9.     I conducted a query of a law enforcement database, which indicated that the Target Location is COLEMAN-HUMPHREY's home address, and I also contacted the Wayne County Tether Unit, who informed me that data from COLEMAN-HUMPHREY's GPS tether indicates that COLEMAN-HUMPHREY frequently stays overnight at the Target Location. Based on this information, and in connection with my training and experience, I have concluded that the Target Location is COLEMAN-HUMPHREY's primary residence.

<u>Probable Cause</u>

10.     I reviewed social media posts associated with the Instagram account "flexdarapper44" (the "Subject Account") from at least May 2020 through July 2020. After reviewing videos and tagged posts—and the individuals depicted in the videos and posts—I determined based on my training and experience that COLEMAN-HUMPHREY, who frequently appears in those posts and videos, is the account user for the Subject Account.

11.     On July 14, 2020, I reviewed a series of videos posted to the Subject Account. While reviewing "Stories" from this account, I observed a series of videos showing COLEMAN-HUMPHREY in possession of multiple firearms.

12.     On July 13, 2020, several Instagram "stories" posted to the Subject Account in which COLEMAN-HUMPHREY can be seen in possession of a Springfield, SD series firearm. In the videos, I observed markings on the firearm,

including "XD" on the slide of the firearm, in the video as well as specific markings on the frame of the firearm, including the "Springfield Armory U.S.A." The serial number appears to begin with "U."  I provided the images and video of the firearm to ATF Firearms and Ammunition Technology Division ("FATD") Firearms Enforcement Officer ("FEO") James Barlow, who advised me that the firearm appeared to be a Springfield XD series, semi-automatic pistol. Depicted below:



13.     I also consulted with ATF Special Agent Michael Jacobs, an interstate nexus expert, who reviewed the Instagram photographs and video. Special Agent Jacobs advised me that he concluded based on his training and experience that a Springfield XD series firearm meets the federal definition of a firearm and was manufactured outside the state of Michigan.

14.     The following are additional observations I made regarding what is depicted in the Instagram stories posted to the Subject Account on July 13, 2020:

15.     In one of the stories posted to the Subject Account on July 13, 2020, at approximately 5:00 p.m., COLEMAN-HUMPHREY can be seen in possession of the above-referenced firearm. The video begins with COLEMAN-HUMPHREY in a vehicle, smoking. The video then pans to his lap, where the firearm can be seen. As the video continues, COLEMAN-HUMPHREY picks up the firearm and points it at the camera. Snapshots from the video are included below. In addition, at the approximate time this video was posted, GPS data from COLEMAN-HUMPHREY's tether places him at the Target Location.





16.    In another video posted to the Subject Account on July 13, 2020, at approximately 5:00 p.m., COLEMAN-HUMPHREY can be seen holding two firearms, and COLEMAN-HUMPHREY appears to be in his bedroom in this video. Below are snapshots from the video. In addition, at the approximate time of this post, GPS data from COLEMAN-HUMPHREY's tether places him at the Target Location.





17.     On July 14, 2020, at approximately 6:00 a.m., additional Instagram "stories" were posted to the Subject Account. In these videos, COLEMAN-HUMPREY can be seen smoking in a vehicle while holding a firearm with a red dot front sight. Below are snapshots from the video:



18.     On July 14, 2020, at approximately 4:30 p.m., an additional Instagram "story" was posted to the Subject Account. In this story, two firearms, a quantity of U.S. Currency, and a large bag of what appears—from its color and appearance based on my training and experience—to be marijuana can been seen on a windowsill. The caption for this post was: "Don't try to put a btc on me she gone get popped." The firearm that is farthest to the left in the screenshot below (which is a

screenshot from the post) has characteristics, including the grip and safety (depicted below on the top rear of the firearm grip), that are consistent with a Springfield Armory SD series firearm. At the approximate time of this post, GPS data from COLEMAN-HUMPHREY's tether places him at the Target Location. Below is a snapshot of the post:



19.    On July 14, 2020, at approximately 5:30 p.m., additional Instagram "stories" were posted to the Subject Account. In these videos, COLEMAN-

HUMPREY can be seen in a bedroom, lying on what appears to be the same bed that can be seen in the bedroom video described above, with two firearms on his chest. The firearm on his upper chest near his chin in the screenshot below (taken from the post) has the same characteristics as the Springfield Armory SD series firearm as previously described. At the approximate times of these posts, GPS data COLEMAN-HUMPHREY's tether places him at the Target Location.



20.    On July 15, 2020, at approximately 11:09 a.m., a series of Instagram "stories" were posted to the Subject Account, in which COLEMAN-HUMPHREY can be seen in possession of the above-referenced Springfield Armory SD series

firearm. During these videos, COLEMAN-HUMPHREY is shown in a vehicle, smoking, and displaying two firearms. At one point during the video, both firearms can be seen on the floor of the vehicle. The serial number of the Springfield Armory, XD, .40 caliber appears to be "US377642." I queried that serial number in the Law Enforcement Information Network ("LEIN"), which indicated that serial number indeed corresponded to a Springfield Armory, XD, .40 caliber, semi-automatic firearm, purchased from Action Impact on July 23, 2010 and registered to an individual (whose name is known to me but withheld for confidentiality and who does not appear to be a relative of COLEMAN-HUMPHREY) whose residence is in Detroit, Michigan (but not COLEMAN-HUMPHREY's residence). According to LEIN, the firearm has not been reported stolen. Below are snapshots taken during the video that was posted to the Subject Account.





21.     On July 15, 2020, at approximately 11:40 a.m., I conducted surveillance at the Target Location and observed a white Chevrolet Traverse backed into the driveway of the Target Location. I also observed black gutters and white siding along the north side of the Target Location, which are consistent with gutters and siding I observed in several of the videos posted to the Subject Account, including some of the posts described above.

22.     COLEMAN-HUMPHREY is seen possessing a Springfield Armory, SD series firearm, in pictures posted beginning on July 13, 2020, at approximately 5:00 p.m. and as recently as July 15, 2020, at approximately 11:09 a.m. COLEMAN-

HUMPHREY has been on pretrial release and under HYTA probation starting prior to July 13, 2020 and continuing through at least July 15, 2020.  In addition, at the time of several of the above-referenced posts to the Subject Account, GPS data from COLEMAN-HUMPHREY's tether places him at the Target Location.

<u>Training and Experience</u>

23.    Based on my training and experience, individuals who possess firearms often keep them on their person, and store them at the location they reside. I know that firearms and firearm parts are durable and non-perishable goods. Therefore, firearms and firearm parts are expected to remain in the individual's possession for extended periods and are not quickly discarded.

24.    I know, based on my training and experience, that because COLEMAN-HUMPHREY is on pretrial release for a felony offense as well as COLEMAN-HUMPHREY's probation status under HYTA, that COLEMAN-HUMPHREY is unable to lawfully purchase or receive a firearm. Accordingly, there is probable cause to believe that COLEMAN-HUMPHREY obtained the firearms depicted in the above-described Instagram posts through unlawful means, and is therefore involved in firearms trafficking.

25.    Based on my training and experience, subjects prohibited from possessing firearms, as COLEMAN-HUMPHREY is, often utilize individuals who can pass background checks to purchase their firearms in violation of 18 U.S.C. §

922(a)(6) (false statement with respect to any fact material to the lawfulness of the sale or other disposition of a firearm). Evidence of such transactions is found often in the residence of the prohibited individual, and may include receipts from the purchase, communications about transaction, and additional parts or items purchased with the firearm.

26.     Based on my training and experience, I know that firearms traffickers will utilize a passport and may be in possession of receipts or other documentation indicating the path the illegal firearms travel and information regarding scheduling or whereabouts. I know, based on my training and experience, that firearms traffickers will keep their passport and other important documents, including sensitive documents that may reveal their illegal activities, in their residence in a secure location.

27.     Based on my training and experience, I know that firearm traffickers often utilize techniques to prevent the detection of firearms that are shipped unlawfully by means of falsifying invoices, bills of sale, shipping papers, and customs forms. They also list the firearms as other items, which include, but are not limited to, firearms parts and pieces (rather than firearms) and components utilized in the automotive, industrial, and machinery industries. In addition, illegal firearm traffickers have been known to conceal firearms inside of other objects to avoid detection by law enforcement officials.

28.     I know based upon training and experience that one key indicator of illegal firearm and ammunition trafficking activity is the use of complex methods for ordering, paying for, and transferring the firearms, firearm components, and/or ammunition. I know that illegal firearm traffickers utilize payment methods that are often difficult to trace, which include utilizing United States currency, money orders, wire-transfers, PayPal accounts and/or pre-paid credit cards held by different subjects. Illegal firearm traffickers utilize these methods in order to minimize the ability for law enforcement officials to identify the original source of funds by means of compartmentalization.

29.     I know from training, experience, and conversations with veteran law enforcement officers that financial documents and records establish legitimate income and net worth, and this proves that assets in excess of legitimate sources are from another source, such as illegal trafficking of firearms.  Indeed, courts have recognized that "unexplained wealth" is probative evidence of contraband trafficking.  These items are kept in secure locations within the residences, offices, garages, automobiles, storage lockers, and/or safe deposit boxes, for ready access and to conceal such items from law enforcement authorities.

30.     I know based upon training and experience that firearms traffickers often possess other items commonly used or acquired in connection with the sale of firearms and possess those items within their homes, automobiles, and numerous

other places which they have access to and control over, so that they are easily accessible, and to hamper the activities of law enforcement. Some of these items include, but are not limited to, other firearms (*i.e.*, merchandise), firearm parts, ammunition, firearm receipts, firearm brochures or owner's manuals, records of sales or acquisition of firearms, firearms magazines, and holsters.

<u>Use of Cellular Phones in Firearms Trafficking</u>

31.    Based on my training and experience, and the investigations of other law enforcement officers with whom I have had discussions, those who are engaged in firearms trafficking, often use multiple cellular telephones to facilitate their trafficking activities. Firearms traffickers commonly use cellular telephones to communicate with co-conspirators, as well as to store names, numbers, and contact information of other subjects involved with their criminal activities, including customers, suppliers and couriers. Accordingly, cellular phones serve both as an instrumentality for committing the crime and a storage device for evidence of the crime.

32.    Cellular telephones are likely to contain evidence related to recently called firearms contacts or messages/calls received from the contacts, the names and telephone numbers of firearms contacts, messages to/from firearms traffickers, photographs of or activity with firearms, and photographs of those involved in the crimes. In this respect, cellular telephones are tools of firearms trafficking.

33.    Cellular telephones contain a "call log," which records the telephone number, date, and time of calls made to and from the phone.

34.    Cellular telephones have increased capabilities to include:  storing names and phone numbers in electronic "address books"; sending, receiving, and storing text messages and email; taking, sending, receiving and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the internet. Cellular telephones may also include global positioning system ("GPS") technology for determining the location of the device.

35.    I am requesting that the search warrant for the Target Location authorize the seizure of all cell phones associated with COLEMAN-HUMPHREY located at the Target Location.

36.    Based on my training and experience, as well as from information found in publicly available materials including those published by Apple and other cellular phone manufactures, that some cellular phones such as iPhones offer their users the ability to unlock the device via the use of a fingerprint or thumbprint (collectively, "fingerprint") in lieu of a numeric or alphanumeric passcode or password. This feature is called Touch ID.

37.     If a user enables Touch ID on a given Apple device, he or she can register up to five fingerprints that can be used to unlock that device. The user can then use any of the registered fingerprints to unlock the device by pressing the relevant finger(s) to the device's Touch ID sensor, which is found in the round button (often referred to as the "home" button) found at the bottom center of the front of the device. In my training and experience, users of Apple and other devices that offer Touch ID often enable it because it is considered a more convenient way to unlock the device than by entering a numeric or alphanumeric passcode or password, as well as a more secure way to protect the device's contents. This is particularly true when the user(s) of the device are engaged in criminal activities and thus have a heightened concern about securing the contents of the device.

38.     In some circumstances, a fingerprint cannot be used to unlock a device that has Touch ID enabled, and a passcode or password must be used instead. These circumstances include: (1) when more than 48 hours has passed since the last time the device was unlocked and (2) when the device has not been unlocked via Touch ID in 8 hours and the passcode or password has not been entered in the last 6 days. Thus, in the event law enforcement encounters a locked Apple device, the opportunity to unlock the device via Touch ID exists only for a short time. Touch ID also will not work to unlock the device if (1) the device has been turned off or

restarted; (2) the device has received a remote lock command; and (3) five unsuccessful attempts to unlock the device via Touch ID are made.

39.     The passcode or password that would unlock the cellular phone(s) seized at the Target Location is/are not known to law enforcement. Thus, it will likely be necessary to press the finger(s) of the user of the cellular phone(s) found during the search of the Target Location to the device's Touch ID sensor in an attempt to unlock the device for the purpose of deactivating the Touch ID and/or other security features to allow any future search authorized by a search warrant. Attempting to unlock the relevant device(s) via Touch ID with the use of the fingerprints of the user is necessary because the government may not otherwise be able to access the data contained on those devices for executing any future search warrants authorized by a court of competent jurisdiction.

40.     Based on my training and experience, the person who is in possession of a device or has the device among his or her belongings at the time the device is found is likely a user of the device. However, based on my training and experience, that person may not be the only user of the device whose fingerprints are among those that will unlock the device via Touch ID, and it is possible that the person in whose possession the device is found is not actually a user of that device at all. Furthermore, based on my training and experience, in some cases, it may not be possible to know with certainty who is the user of a given device, such as if the

device is found in a common area of a premises without any identifying information on the exterior of the device. Thus, it will likely be necessary for law enforcement to have the ability to require any occupant of the Target Location to press their finger(s) against the Touch ID sensor of the locked Apple device(s) found during the search of the Target Locations in order to attempt to identify the device's user(s) and unlock the device(s) via Touch ID.

41.     Although I will not know which of a given user's 10 fingerprints is capable of unlocking a particular device, based on my training and experience, it is common for a user to unlock a Touch ID-enabled device via the fingerprints on thumbs or index fingers. In the event that law enforcement is unable to unlock the cellular phone(s) seized at the Target Location as described above within the five attempts permitted by Touch ID, this will simply result in the device requiring the entry of a password or passcode before it can be unlocked.

42.     Due to the foregoing, I request that the Court authorize law enforcement to press the fingers (including thumbs) of individuals found at the Target Location to the Touch ID sensor of the applicable cellular phone(s) found at the Target Location for the purpose of attempting to unlock the device via Touch ID in order to allow the search of the contents as authorized by any future search warrants. This search warrant only authorizes law enforcement to (1) unlock the phone; and (2)

disable all security settings to enable a search of the device, subsequent to a search warrant, in the future.

## Manner of Execution

43.     *Sealing of Documents*.  I request that the Court order all documents in support of this application, including the affidavit and search warrant, be sealed until further order by the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation.

## Conclusion

44.     There is probable cause to believe that evidence, contraband, fruits and instrumentalities of firearms violations, including violations of 18 U.S.C. § 922(n) (obtaining a firearm while under indictment) will be found at the Target Location.

45.     In consideration of the foregoing, I respectfully request that this Court issue a search warrant for the Target Location more fully described in Attachment A for the items listed in Attachment B.

Respectfully submitted,

Brady Rees, Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn to before me and signed in my
presence and/or by reliable electronic means

Hon. Anthony P. Patti
United States Magistrate Judge

Dated:   July 15, 2020

<u>ATTACHMENT A</u>
Description of Location To Be Searched

Target Location:  **19550 Berg Road, Detroit, Michigan**, which is in Eastern

District of Michigan. Further described as a single-family residence with white

brick and black siding. It is further described as the fourth residence south of

Frisbee Street, on the east side of Berg Road, between Frisbee Street and Vassar

Drive, with the numbers "19550" visible and attached the residence, left of the

front entrance. The Target Location to be searched includes any appurtenances to

the real property that is the Target Location and any vehicles on the property or

curtilage at the time of the search.



ATTACHMENT B
Items To Be Seized

The Government is authorized to seize all information that constitutes fruits, evidence, or instrumentalities of violations of 18 U.S.C. § 922(n) (obtaining a firearm while under indictment), involving Jaquavious COLEMAN-HUMPHREY, including but not limited to, information pertaining to the following matters:

1.    Items of clothing that COLEMAN-HUMPHREY is seen wearing in social media that contain firearms, including: shoes, pants, sweatshirts, and t-shirts;

2.    Any firearms and ammunition;

3.    Any photographs of any weapons, firearm, or ammunition

4.    Any controlled substances, including but limited to marijuana, controlled substance paraphernalia, or evidence associated with the unlawful distribution of any controlled substance;

5.    All evidence of firearms trafficking including any sale, transportation, possession or distribution of a firearm, including but not limited to records, papers, ledgers, tally sheets, stored electronic communication devices, mobile telephones, telephone numbers of customers, suppliers, or couriers and the stored electronic information containing within, other papers;

6.    Any digital media including but not limited to cell phones, digital cameras, computers, compact discs and flash drives that could contain photographs and contents therein;

7.  Items of identification and papers, documents and affects which establish dominion and control of the premises, including, but not limited to, driver's license, keys, mail, envelopes, receipts for rent, bills from public utilities, photos, address books and similar items; and

8.  Items of identification and papers, documents and affects which establish dominion and control of 19550 Berg Road, Detroit, Michigan, including, but not limited to, driver's license, keys, mail, envelopes, receipts for rent, bills from public utilities, photos, address books and similar items.

AUSA: Trevor Broad          Telephone: (313) 226-9100
AO 93 (Rev. 11/13) Search and Seizure Warrant     Special Agent: Brady Rees          Telephone: (313) 202-3400

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

| | | |
|---|---|---|
| In the Matter of the Search of | ) | Case: 2:20-mc-50827 |
| *(Briefly describe the property to be searched* | ) | Judge: Goldsmith, Mark A. |
| *or identify the person by name and address)* | ) Case No. | Filed: 07-15-2020 |
| | ) | IN RE:SEALED MATTER (SW)(MLW) |
| 19550 Berg Road | ) | |
| Detroit, Michigan | ) | |
| (More fully described in Attachment A) | ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____ Eastern _____ District of _____ Michigan _____ .
*(identify the person or describe the property to be searched and give its location)*:

See ATTACHMENT A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See ATTACHMENT B.

**YOU ARE COMMANDED** to execute this warrant on or before     July 29, 2020 _____ *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to  the presiding United States Magistrate Judge on duty  .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     July 15, 2020     4:33 pm _____

_____
*Judge's signature*

City and state:     Detroit, Michigan _____     Hon. Anthony P. Patti     U. S. Magistrate Judge
_____
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| **Certification** |
|---|

   I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

             _____

*Executing officer's signature*

             _____

*Printed name and title*